# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE LUIS CRUZ RAMIREZ,** )<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**NANCY A. BERRYHILL, Acting** )<br>**Commissioner of Social Security,** )<br>**Defendant.** )<br>_____ ) | **NO. SACV 17-0417 (KS)**<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Plaintiff filed a Complaint on March 9, 2017, seeking review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). (Dkt. No. 1.) On March 13, 2017 and April 12, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 7, 12, 13.) On October 23, 2017, the parties filed a Joint Stipulation ("Joint Stip.") (Dkt. No. 19) in which Plaintiff seeks an order reversing the Commissioner's decision and "an outright award of benefits" or, in the alternative, a remand for further administrative proceedings (Joint Stip. at 43). The Commissioner requests that the ALJ's decision be affirmed or remanded for further proceedings. (*Id.*)

On November 6, 2017, Plaintiff filed a Request to Supplement Record with New and Material Evidence ("Request to Supplement"). (Dkt. No. 21.) The Request to Supplement attached a Notice of Award dated October 29, 2017 that found Plaintiff disabled as of December 8, 2015 based on a subsequent disability application that Plaintiff filed. (*Id.* at 2.) On December 19, 2017, Defendant filed an Opposition to Plaintiff's Request to Supplement. (Dkt. No. 23.) On January 17, 2018, the Court issued an Order that granted in part and denied in part the Request to Supplement. (Dkt. No. 24.) The Court granted Plaintiff's request to supplement the record with the 2017 Notice of Award, but declined to grant remand based solely on the fact of the 2017 Notice of Award. (*Id.* at 4.)

The issues are now fully briefed and the Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for disability benefits on August 30, 2013 in which he alleged disability commencing January 22, 2012. (Administrative Record ("AR") 161-162.) The claim was denied initially on March 20, 2014 and upon reconsideration on July 16, 2014. (AR 18.) Petitioner filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Following the hearing held on September 1, 2015, ALJ Joan Ho issued an adverse decision denying benefits on December 7, 2015. (AR 15-33.) Plaintiff filed a Request for Review and the Appeals Council denied review on February 8, 2017. (AR 1-6.) This timely appeal followed.

//
//
//
//

# SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (AR 20.) Then, applying the five step evaluation process, the ALJ determined, at step one, that Plaintiff had not engaged in substantial gainful activity since January 22, 2012, the alleged disability onset date. (*Id.*) At step two, the ALJ found that Plaintiff has the following severe impairments:

> obesity; peroneus longus tendon tear, status post-surgical repair; diabetes mellitus; diabetic peripheral neuropathy; bilateral diabetic proliferative retinopathy, status post vitrectomy and pan retinal photocoagulation; bilateral diabetic foot ulcers, status post osteotomies; diabetic chronic kidney disease; glomerulosclerosis; neovascular glaucoma, status post shunt right eye; bilateral cataract, status post removal of cataract in the right eye; and degenerative disc disease of lumbar spine; anemia.

(AR. 20.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform

> less than a full range of sedentary work . . . . [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 2 hours in an 8 hour day; sit 6 hours in an 8 hour day with normal [sic]; never operate foot controls with bilateral lower extremities; occasional ramp and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally balance, stoop, knee [sic], crouch, and crawl; avoid concentrated exposure to work place

3

hazards such as dangerous moving machinery and unprotected heights; and limited to occupations that do not require depth perception.

(AR 23.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 26.) At step five, based on the VE's hearing testimony, the ALJ determined "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform, including occupations such as order clerk (DOT 209.567-014)[1], with an exertional level of sedentary and SVP 2; addresser (DOT 209.587-0101), sedentary, SVP 2; and call out operator (DOT 237.367-014), sedentary, SVP 2. (AR. 27-28.) The ALJ thus concluded that Plaintiff has not been under a disability as defined in the Social Security Act, from January 22, 2012 through the date of his decision. (AR 28.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's

---

[11]     "DOT" refers to the "Dictionary of Occupational Titles," while "SVP" refers to "specific vocational preparation," which is the amount of time required to prepare for a particular type of job. *See* https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf, at p. 8, 33.
.

findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISPUTED ISSUES

Plaintiff challenges the Agency's denial of benefits based on the following nine disputed issues:

Issue No. 1: Whether the ALJ adequately addressed Plaintiff's testimony regarding his pain and limitations.

Issue No. 2: Whether the ALJ properly considered ineffective ambulation.

Issue No. 3: Whether the ALJ properly considered the opinion of Dr. Kent.

Issue No. 4: Whether the ALJ properly considered the state agency opinion limiting Plaintiff to simple, repetitive tasks and a moderate limitation in concentration, persistence, and pace.

Issue No. 5: Whether the ALJ failed to provide any rationale for the vision limitations provided.

Issue No. 6: Whether the ALJ properly considered obesity.

Issue No. 7: Whether the ALJ properly considered if Plaintiff meets the kidney disease or equaling the listing considering all of his impairments combined.

Issue No. 8: New and material evidence warrants disabled or remand.

Issue No. 9: Whether the ALJ properly considered the reporting of Drs. Rameshini and Glandorf, chiropractors.

(Joint Stip. 1-2.)

//
//
//
//
//

**DISCUSSION**

**I.     ALJ's Assessment of Plaintiff's Subjective Testimony (Issue One)**

In assessing Plaintiff's subjective testimony regarding the severity of his symptoms,

the ALJ found that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms." (AR 24.) However, the ALJ found that Plaintiff's

statements about the intensity, persistence, and limiting effect of those symptoms were "not

entirely credible." (*Id.*) Plaintiff argues that the ALJ failed to provide legally sufficient

reasons, supported by substantial record evidence, for discounting Plaintiff's credibility as to

the severity of his symptoms. (Joint Stip. at 4-15.) For the reasons discussed below, the

Court agrees.

**A. Applicable Law**

An ALJ must make two findings before determining that a claimant's pain or symptom

testimony is not credible.[2] *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014).

"First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment which could reasonably be expected to produce the

pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if

the claimant has produced that evidence, and the ALJ has not determined that the claimant is

malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the

---

[2]     Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p, which required the ALJ to assess the credibility of a claimant's statements. SSR 16-3p focuses on the existence of medical cause and an

evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness'." *See*

Guide to SSA Changes in Regulations and Rulings 2016-17, June 2017. The revision is not applicable to Plaintiff's application here, which was filed on August 20, 2013. But the Ninth Circuit has acknowledged that SSR16-3p is

consistent with existing precedent that requires that the assessments of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable

impairments that could reasonably be expected to produce those symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678, n.5 (9th Cir. 2017).

claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Treichler*, 775 F.3d at 1102; *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear-and-convincing standard").

In weighing a claimant's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

### B. Analysis

The ALJ gave five reasons for finding Plaintiff's subjective testimony "only partially credible." (AR 26.) She reasoned that: (1) Plaintiff's medical records indicated that his high blood pressure was well controlled and stable (AR 26, citing Exhibit 2E/2); (2) she next cited Plaintiff's ability "to run errands, go grocery stores, drive his own care and perform housekeeping chores" (*id*., citing Exhibit 4E/1, 3 (errors in original)); (3) despite Plaintiff's testimony that he could not engage in substantial gainful activity, the ALJ concluded that the "objective medical evidence did not reveal significant abnormalities" (*id.,* citing Exhibit

9F/135; 13F/1); (4) the ALJ concluded that the medical evidence does not indicate edema to the degree that Plaintiff alleged and pointed to medical notes in April and May 2015 from two different doctors that indicated no findings of edema (*id.*, citing Exhibit 17F/43, 311; 27F/27); and (5) the ALJ pointed to Plaintiff's report that despite his testimony about continuing problems with foot ulcers and tendon surgery, he reported "more and more weight bearing" and his treating podiatrist, Dr. Spencer, had indicated that Plaintiff should return to a "sit-down job" (*id.*, citing Exhibit 1F/36-37; 18F/2).

Plaintiff, who was 41 years old at the time of his application,[3] testified that he was unable to work initially because of a ruptured tendon in his right foot that led to a necrotic ulcer on his left foot because of putting too much pressure on the left foot. (AR 42.) He testified that the ulcer did not close for over a year and eventually in 2013 he had to have surgery on both feet "to shave [his] bones." (AR 42-43.) He stated that during the period when he had the open ulcer on his foot, he had difficulty standing and walking and his doctors told him to keep his feet elevated at all times and to keep walking to a minimum because of swelling in his foot. (AR 44.) Plaintiff testified that he had difficulty negotiating stairs and, in 2015, another ulcer recurred on the side of his foot. (AR 44.)

Plaintiff also testified that he has pain in his right shoulder if he carries something heavy and he can only do minimal walking because both his feet get swollen. (AR 45-46.) He also testified that he has three dislocated discs in his lower back and has difficulty sitting because of the pain in his shoulder and lower back. (AR 46, 49.) Plaintiff stated that he can sit for about 40 minutes before having to change positions, can sit for about three hours out of an eight-hour work day, and would be able to stand "[f]or about an hour or two" out of an eight hour day. (AR 50.) He can walk about 30 minutes before having to sit down because of pain in his lower back, feet, and shoulder. (*Id.*) He stated that he could not do a sit-down

---

[3]     Under agency guidelines, Plaintiff was considered a "younger individual." *See* 20 C.F.R. § 404.1563.

job because, as advised by his doctor, he needs to keep his feet elevated because they get very swollen.  (AR 51.)

In assessing Plaintiff's credibility, the ALJ made no finding of malingering, therefore, to reject Plaintiff's subjective symptom testimony, the ALJ was required to provide clear and convincing reasons supported by substantial record evidence.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d at 1112).  After considering the record as a whole, the Court finds that the ALJ's reasons for discounting Plaintiff's credibility are neither clear and convincing, nor supported by substantial evidence in the record.

As to the ALJ's first reason, Plaintiff did not testify at the hearing about his high blood pressure as a basis for his disability.  (*See* Joint Stip. at 5.)  The fact that the high blood pressure condition had been stabilized is not, therefore, a clear and convincing reason to reject Plaintiff's credibility about his many other symptoms related to the severe impairments that the ALJ herself identified, including diabetes mellitus, diabetic peripheral neuropathy, bilateral diabetic proliferative retinopathy, and kidney failure.  (*See* AR 20.)

The ALJ's second reason is also legally deficient.  While Plaintiff testified that he is able to run some errands, go to the grocery store, and perform housekeeping duties, he also testified that he has been unable to renew his driver's license because he cannot pass the vision test.  (AR 40.)  The Ninth Circuit has long emphasized that a claimant's ability to engage in some limited daily activity is not sufficient to discount the claimant's testimony. *Reddick v. Chater*, 157 F.3d at 722 (9th Cir. 1998) (ALJ's finding that claimant's activities indicated an ability to work was unsupported by the record where claimant's activities "were sporadic and punctuated with rest"); and *see Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a disability claimant does not need to "vegetate in a dark room" to be deemed eligible for benefits).

Although Plaintiff indicated on a Pain Questionnaire that he can do light housekeeping chores, do errands such as go to the Post Office or grocery store, he also indicated that he needs assistance with lifting and carrying to do these errands and chores. (AR 215.) Plaintiff's testimony is entirely consistent with the longitudinal record of his treatment history, which spans more than 2,000 pages for the period 2012–2015 and provides a detailed record of treatment for worsening problems with his ulcerated feet, retinopathy, chronic kidney disease, uncontrolled diabetes, as well as back and shoulder pain. (*See, e.g.,* AR 274-2342.)

The third reason that the ALJ gave for discounting Plaintiff's credibility is that the "objective medical evidence did not reveal significant abnormalities." (AR 26.) The ALJ cites in support of her conclusion an "MRI of The Lumbar Spine" dated September 27, 2012. (*See* AR 536 (Exhibit 9F/135; 13F/1).) That report specifically notes that Plaintiff presented with "low back pain, numbness and tingling traveling down both legs." (AR 535 (Exhibit 9F/134).) The report documented: a diffuse disc bulge at L3/L4 "compressing the ventral aspect of [the] thecal sac and bilateral transiting nerve roots" with encroachment to the bilateral exiting nerve roots, and facet arthrosis; at L4/L5 and L5/S-1, "broad-based disc protraction" as well as "Spondylosis deformans, multilevel, with degenerative disc disease at L3/L4, L4/L5 and L5/S-1." (*Id*. at 535-36.) The MRI notes conclude with the statement, "No other abnormalities are seen." (*Id.*) Thus, it appears that the ALJ cherry-picked a single comment as a reason to reject Plaintiff's credibility, when the balance of the document indicates significant degenerative disc disease that is consistent with Plaintiff's subjective testimony about the severity of pain caused by his back condition. Because the ALJ's third reason is contradicted by the record evidence, this reason is not clear and convincing and not supported by substantial record evidence. Accordingly, the ALJ erred.

The fourth reason the ALJ rejected Plaintiff's subjective pain testimony is that the "medical evidence does not indicate edema to the degree he alleged" and the ALJ pointed to

two medical notes from April and May 2015 that indicated no findings of edema. (AR 26.) But the medical records show a history of edema in Plaintiff's feet and ankle, including the records of "significant edema over the foot and ankle" dating back to January 2012. (AR 278, 289.) Although the edema appears to have briefly decreased by April 2012 (AR 299), in June, Plaintiff reported worsening problems with his right ankle (AR 301). The records also show edema continued to be an issue following surgery to repair a tendon tear and in connection with a necrotic ulcer of the foot. (*See* AR 417 ("moderate edema"); 618 ("bruising, swelling present at the right ankle"); 624 (swelling, atrophy at right ankle); 926 (showing ulcer, edema, pain, diabetic neuropathy).) Based on the record as a whole, the Court finds that the ALJ's fourth reason also fails to meet the legal standard to discount Plaintiff's credibility.

Finally, the ALJ points to Plaintiff's report of being able to support "more and more weight bearing" and his treating podiatrist's recommendation that Plaintiff could return to a "sit-down job." (AR 26.) However, these notations are from an assessment by Dr. Spencer in July 2012, when Dr. Spencer believed that the pain related to the tendon tear would "likely resolve within the next month or six weeks" and he opined that Plaintiff did not need surgery at that time. (AR 307.) Later records show, however, that both of those predictions did not come to pass. Plaintiff *did* require surgery to repair the tendon and the records indicate that Plaintiff had continuing pain related to diabetic neuropathy as well as degenerative disc disease. Consequently, the ALJ's discounting of Plaintiff's credibility based on these 2012 notes about Plaintiff's weight bearing ability and capacity for a sit-down job is not supported by the record as a whole.

Accordingly, the ALJ failed to properly consider Plaintiff's credibility and this error warrants remand.

//

//

**II.	Whether the ALJ Properly Considered Ineffective Ambulation (Issue Two)**

At step three, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Here, the ALJ determined that Plaintiff's severe impairments did not meet or equal any of the listed impairments. (AR 23.) Plaintiff contends, however, that the AJL erred in failing to consider whether Plaintiff meets the Orthopedic Listing under Rule 1.00B2b based on "ineffective ambulation." (Joint Stip. 19-20.) Defendant argues that Plaintiff fails to show that he should be deemed disabled under any listing. (*Id.* at 21.) For the following reasons, the Court finds that the ALJ did not err here.

**A. Applicable Law**

In order to establish Listing § 1.04A, a plaintiff must demonstrate the following:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of the motion of the spine, motor loss (atrophy associated with muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A. To meet the Listing, a claimant must establish the he suffered from one of the conditions in the Listing for a 12-month period. (*Id.*) In addition, a claimant's impairments must "meet all of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

## B. Analysis

At the hearing, Plaintiff's counsel argued in his closing statement that Plaintiff "should be found incapable of effective ambulation. He was not supposed to be weight-bearing. He was supposed to have his legs elevated." (AR 60.) The attorney stated that the ulcer on Plaintiff's foot lasted over a year and the record evidence documented motor and sensory neuropathies. (AR 61-62.) Given this record, the attorney argued, Plaintiff met the criteria "from an orthopedic perspective" to satisfy listing 1.04A. (AR 61.)

Listing 1.04A is part of a broad category of Listings defined as "Musculoskeletal Impairments." (Listing 1.00.) In order to meet the Listing, Section 1.00B(2)(a) requires that a claimant must establish that he has lost the ability to ambulate effectively as a result of his condition. Courts in this circuit have concluded that "Listing 1.04A does not require a claimant to demonstrate inability to ambulate in addition to the other stated requirements." *Espejo v. Astrue*, No. CV 08-0020 PJW, 2009 WL 1330799, at *5, n.2 (C.D. Cal. May 11, 2009) (citations omitted).

Here, the ALJ found that Plaintiff's degenerative disc disease was a severe impairment. (AR 20.) But the ALJ determined that Plaintiff's impairments did not meet listing 1.04A because "there is no evidence of nerve compression, decreased range of motion, sensory loss, atrophy, reduced motor strength, or positive straight leg raise test." (AR 23.) In addition, the ALJ noted that Plaintiff's "visual acuity was 20/100 on the right and 20/150 on the left and the laboratory results did not show the required level under 6.05 for his kidney disease." (*Id.*)

Nonetheless, some of the medical findings included evidence of nerve compression in 2012. Specifically, a lumbar MRI in September 2012 indicated that a diffuse disc bulge at L3/L4 was "compressing the ventral aspect of thecal sac and bilateral transiting nerve roots"

14

as well as "compression to the left exiting nerve root and encroachment to the right exiting nerve root" at L4/L5.  (AR 535-36.)  The ALJ did not mention this evidence.  At the same time, other evidence suggests that Plaintiff did not meet the Listing.  For example, Dr. Jeff Altman prepared a consultation report in September 2012 in which he noted no evidence of atrophy and "no obvious abnormalities of posture or gait."  (AR 553.)  Dr. Altman also reported that Plaintiff had "lumbar flexion of 70 degrees, extension 20 degrees, and bends were normal. . . . Straight leg raise test was 90 degrees in the sitting position, bilaterally, and approximately 80 degrees in the supine position bilaterally."  (*Id.*)  Dr. Altman's recommendation was "for continued conservative care for symptomatic relief."  (*Id*.)  During a hospitalization in April 2014 at Kaiser Permanente, progress notes indicate that Plaintiff "states he has no difficulty climbing stairs; is independent in mobility and self-care."  (AR 750.)  When, as here, the evidence is subject to more than one rational interpretation, the Court must uphold the ALJ's findings.  *See Molina*, 674 F.3d at 1111.

Accordingly, despite argument at the hearing by Plaintiff's counsel suggesting that Plaintiff met the requirements for Listing 1.04A, the ALJ's conclusion that Plaintiff's impairments did not meet or equal a Listing is well supported by the record and free of legal error.  This issue does not warrant remand.

**III.    Whether the ALJ Properly Considered the Opinion of Dr. Kent (Issue Three)**

Plaintiff next argues that the ALJ did not properly consider the opinion of neurologist Dr. Kent, who conducted a neurological examination of Plaintiff on May 4, 2015.  (AR 2265-2299.)  Dr. Kent found Plaintiff had significant visual acuity issues, advance polyneuropathy, lumbar strain, and tendon tear post-surgery.  (AR 2293.)  As part of his Workers' Compensation assessment, Dr. Kent opined:

//

//

It appears that, from an orthopedic standpoint, [Plaintiff] remains temporarily totally disabled with additional foot surgery scheduled tomorrow. He has numerous additional orthopedic complaints, which will be deferred. From a strictly neurologic standpoint, no additional physical restrictions are required.

(AR 2297.) Further, in assessing Plaintiff's return to work status, Dr. Kent concluded that "[f]rom a neurologic standpoint, [Plaintiff] has not provided any permanent physical restrictions which would interfere with his ability to return to the open labor market." (*Id.* at 2298.)

Plaintiff argues that the ALJ erred in not discussing Dr. Kent's opinions and, in particular, not addressing Dr. Kent's determination that Plaintiff was "temporarily totally disabled" ("TTD"). (Joint Stip. at 22-23.) Defendant responds that the ALJ did not err because nothing in the record shows that Plaintiff's temporary condition "met the duration requirement for social security disability." (*Id.* at 23.)

## A. Applicable Law

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted). Although Dr. Kent is an examining physician, not a treating physician, because his opinion was contradicted, the ALJ was nonetheless required to articulate specific and legitimate reasons supported by substantial evidence for discounting his opinion. *See Trevizo*, 871 F.3d at 675. It was, therefore, legal error for the ALJ to simply ignore his opinions. *See Garrison*, 759 F.3d at 1012 (ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another); *see also Marsh*, 792 F.3d at 1172-73 ("an ALJ cannot in its decision totally ignore a treating doctor and his or

her notes, without even mentioning them"). The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of an examining physician. (*Id.*)

**B. Analysis**

The ALJ discussed Dr. Kent's opinions in the context of evaluating the physicians associated with Plaintiff's Workers' Compensation claim. (AR 26.) The ALJ summarized Dr. Kent's opinions, noting that he "commented that [Plaintiff] has no physical restrictions from a strictly neurological standpoint" and that Dr. Kent "indicated that he did not provide any permanent physical restrictions that would interfere with ability to return to open market." (*Id.*) The ALJ did not discuss Dr. Kent's specific findings regarding Plaintiff's visual acuity and also did not indicate what weight she attributed to Dr. Kent's opinions.

The ALJ's failure to identify what weight, if any, she gave to Dr. Kent's opinions as an examining physician, does constitute legal error. Without stating what weight the ALJ gave to Dr. Kent's opinions, the Court cannot determine whether the ALJ has provided the necessary quantum of supporting evidence to support that assessment. Accordingly, this issue warrants remand for the ALJ to set forth what weight she gave to Dr. Kent's opinions and to identify the specific record evidence that supports that weight.

Defendant also argues that Plaintiff failed to show that the orthopedic condition that caused Dr. Kent to find Plaintiff subject to TTD met the agency's duration requirement. (Joint Stip. at 24-25.) Under the Social Security Act and related agency guidelines, unless an impairment is expected to result in death, the impairment must have lasted or be expected to last for a continuous period of not less than twelve months for the claimant to be found disabled. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. But failure to satisfy the duration requirement is not a rationale on which the ALJ relied in reaching her adverse decision. (*See* AR at 26.) A reviewing district court "may not affirm the ALJ on a ground

upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citing *Connett*, 340 F.3d at 874). Accordingly, the duration issue does not warrant reversal.

**IV.    Whether the ALJ Properly Considered the State Agency's Opinion Limiting Plaintiff to Simple, Repetitive Tasks and a Moderate Limitation in Concentration, Persistence, and Pace  (Issue 4)**

In issue four, Plaintiff argues that the ALJ erred in two ways:  (1) she did not provide legally sufficient reasons for rejecting  the state Workers' Compensation opinion that limited Plaintiff to simple, repetitive, tasks ("SRTs") (Joint Stip. at 25-26); and (2) she "never addressed the moderate limitation in concentration, persistence, and pace found by the State Agency[]" (*id.* at 26). Specifically, Plaintiff notes that the State Agency doctor disagreed with the consultative examiner's opinion, finding "it was an understatement of Mr. Cruz's abilities." (Joint Stip. at 26 (citing AR 95).) Plaintiff maintains that the ALJ's "rejection of the State Agency opinion in favor of the rejected consultative examiner opinion is not substantial evidence." (AR at 26.) Plaintiff also argues that the ALJ's determination that Plaintiff only had a mild limitation in concentration, persistence, and pace, is erroneous because "[t]his mild restriction is not supported by the evidence, and the ALJ never explains why she did not accept the opinion of the State Agency doctor concerning this limitation." (*Id.*) Plaintiff emphasizes that the ALJ is required under Social Security Ruling 96-5p to consider the State Agency opinion. (*Id.*)

Generally, greater weight is given to the opinion of an examining source than to that of a non-examining source. *Lester v. Chater*, 81 F.3d at 830-31. Thus, Defendant argues that, "the opinion of examining psychiatrist Sean Buckley, M.D., was entitled to great weight and justified the rejection of the State Agency physicians' opinions of a limitation to simple, repetitive tasks." (Joint Stip. at 27.) Defendant also points out that the ALJ does not have to give explicit reasons for rejecting contradicted opinions of nontreating physicians.

(*Id.*) Finally, Defendant contends that "because a limitation to simple work adequately captures a doctor's finding that a claimant has moderate limitations in concentration, persistence, or pace," one can infer that the ALJ necessarily rejected the State Agency physicians' opinions of a moderate limitation in concentration, persistence, and pace. (*Id.*)

## A. Analysis

Here, the ALJ concluded that Plaintiff had only "mild difficulties with regard to concentration, persistence or pace[.]" (AR 21.) In a March 1, 2014 assessment, State Agency physician, Randall J. Garland, Ph.D., opined that Plaintiff had "sustained concentration and persistence limitations" and "more than mild problems" with attention/concentration. (AR 75.) Dr. Garland also opined that Plaintiff's ability to "carry out very short and simple instructions" was "not significantly limited." (AR 76.)

The ALJ noted that "board certified consultative psychiatrist, Sean Buckley, M.D., was of the opinion that [Plaintiff] was able to perform detailed, complex, and simple repetitive tasks with mild limitations in all other functional abilities." (AR 21.) The ALJ gave Dr. Buckley's assessments "great weight because they are well supported by his mental status examination[.]" (*Id.*) The ALJ went on to summarize Dr. Buckley's findings that during the examination Plaintiff demonstrated:

> good eye contact, cooperative behavior, no psychomotor agitation or retardation, logical and goal directed thought process, no suicidal/homicidal ideation, no hallucinations or delusions, normal speech, orientation times four, intact memory, and good insight/judgment.

(*Id.*) On that basis, the ALJ gave little weight to the State Agency's opinion that Plaintiff is limited to simple repetitive tasks. (*Id.*) Thus, while Plaintiff asserts that the ALJ "never

explains why she did not accept the opinion of the State Agency doctor concerning this limitation," the record demonstrates that, consistent with the requirements of Social Security Ruling 96-5p, the ALJ did, in fact, consider and address the State Agency findings. The ALJ also provided clear and specific reasons, supported by substantial record evidence for discounting the State Agency's opinion. Further, Dr. Buckley's opinions, as an examining psychiatrist, are entitled to greater weight than that of the State Agency physicians' opinions. *See* 20 C.F.R. § 404.1527(c)(1); *Lester*, 81 F.3d at 830-31. Accordingly, the ALJ sufficiently explained her reasons for discrediting the State Agency doctor's opinions and the Court finds no legal error in this aspect of the ALJ's decision.

With regard to the ALJ's assessment of concentration, persistence and pace, Defendant argues that because the ALJ's "limitation to simple work adequately captures a doctor's finding that a claimant has moderate limitations in concentration, persistence or pace, it follows that the ALJ's rejection of the nonexamining physicians' opinions of a limitation to simple, repetitive tasks was also a rejection of their opinions of a moderate limitation in concentration, persistence, and pace." (Joint Stip. at 27.) The Court agrees.

"[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citations omitted).[4] Here, the ALJ's finding that Plaintiff has "mild difficulties with regard to concentration, persistence or pace" is consistent with the restrictions identified by examining psychiatrist Dr. Buckley, whose opinions the ALJ gave great weight. (*See* AR 21.) Accordingly, the Court finds this aspect of the ALJ's assessment is also free of legal error and does not warrant remand.

---

[4]     Plaintiff relies upon Seventh Circuit authority for the contrary proposition that a limitation to simple, repetitive tasks does not incorporate a moderate limitation in concentration, persistence and pace. (Joint Stip. at 28 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-620 (7th Cir. 2010).) *O'Connor-Spinner*, however, is not binding on this district court.

**V.  Whether the ALJ Provided Any Rationale for the Vision Limitations Provided (Issue Five)**

Plaintiff argues that Plaintiff should have been found disabled under the visual acuity listing based on his visual acuity in August 2014 of 20/400 in his right eye and 20/200 in his left eye.  (Joint Stip. at 29 (citing 20 C.F.R. Part 404, Subpart P, App. 1 Rule 2.02).) Plaintiff contends that the ALJ provided no rationale for the RFC limitation to occupations that do not require depth perception.  (*See* Joint Stip. at 29; AR 23.)  Defendant points out that the ALJ discussed Plaintiff's vision problems, including severe impairments of bilateral diabetic proliferative retinopathy, status post vitrectomy; pan retinal photocoagulation and neovascular glaucoma, status post shunt right eye; and bilateral cataract, status post removal of cataract in the right eye.  (Joint Stip. at 30; AR 20-26.)[5]

The Court cannot find anything in the ALJ's assessment that provides a rationale for the depth perception limitation as part of the RFC determination.  Moreover, nothing in the record even discusses any limitations due to Plaintiff's depth perception.  There is substantial evidence concerning Plaintiff's treatment for diabetic retinopathy in both eyes, but none of the records comment on Plaintiff's depth perception.  (*See, e.g.*, AR 1099-1119.) Accordingly, the depth perception limitation in the ALJ's RFC determination is without substantial support in the record and the ALJ erred by failing to provide any reasoning for this functional limitation.  Because it is unclear how or why this impairment factored into the ALJ's RFC determination, the error was not harmless.  Remand is warranted for the ALJ to clarify her basis for including this limitation.

//

---

[5]  Defendant also notes that Plaintiff fails to show that his 2014 visual acuity results met the duration requirements for social security disability.  (Joint Stip. at 30.)  On this narrow point, the Court agrees. The ALJ noted that after Plaintiff underwent cataract surgery due to glaucoma on May 18, 2015—approximately eight months after the August 2014 visions results—the "[s]ubsequent eye examination showed significant improvement of the right eye with visual acuity of 20/100 and 20/150 in the left.

## VI.    Whether the ALJ Failed to Properly Consider Obesity (Issue Six)

Plaintiff argues in issue six that the ALJ failed to properly consider obesity.  (Joint Stip. at 31.)  At the hearing, Plaintiff testified that he is five feet eight inches tall and weighed "about 250 pounds."  (AR 40.)  Plaintiff maintains that the ALJ failed to "explain how this impacts Mr. Cruz's residual functional capacity."  (Joint Stip. at 31.)  Defendant argues that the ALJ found Plaintiff's obesity to be a severe impairment and properly assessed Plaintiff's limitations accordingly.  (*Id.*)

The ALJ found obesity to be a severe impairment, but offers no explanation of how that impairment impacts Plaintiff's other impairments and no explanation for why obesity is not discussed.  *See, e.g., Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003) (ALJ erred in not considering obesity in sequential analysis when obesity "was a condition that could exacerbate her reported illness").  Even if the ALJ's failure can be explained *ex post* by the fact that there is no record evidence that any doctor placed limitations or restrictions on Plaintiff's activities based solely on his obesity, this is insufficient.  The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [she] did not rely."  *Orn*, 495 F.3d at 630; *see also Connett*, 340 F.3d at 874.

Given the well-established correlation between obesity and diabetes milletus, kidney disease, glaucoma, and the neuropathy symptoms that Plaintiff suffers, the ALJ's failure to address obesity as a severe impairment in combination with Plaintiff's other impairments is legal error that is not harmless.  Accordingly, remand is warranted on this issue. The Court's determination that the ALJ erred is not a finding that the ALJ must necessarily find Plaintiff disabled on remand, only that the ALJ should evaluate the record more closely with respect to Plaintiff's obesity and if she again elects to disregard obesity in the sequential evaluation, must articulate legally sufficient reasons supported by substantial evidence in the record for doing so.

Given the complexity and length of Plaintiff's medical records, on remand the ALJ may well benefit from the assistance of a medical expert to reconcile the thousands of pages of medical records that contain findings and opinions from multiple treating and examining sources and provide some insight about how obesity as a severe impairment may factor into Plaintiff's other conditions.

**VII. Whether the ALJ Properly Considered if Plaintiff Meets the Kidney Disease or Equaling the Listing Considering All of Plaintiff's Combined Impairments (Issue Seven)**

### A. Meeting Listing 6.05

Plaintiff contends that the ALJ did not properly consider record evidence regarding Plaintiff's glomerular filtration rate ("GFR") in 2015 that should have resulted in a finding that Plaintiff's kidney disease was at or equal to listing level. (Joint Stip. at 33-34.) Plaintiff argues that because the kidney listing 6.05 requires a GFR of 20 or less and Plaintiff had a GFR of 21 on April 6, 2015 (just one point over listing level), given all of Plaintiff's other impairments, the ALJ should have found that Plaintiff equaled Listing 6.05. (*Id.* at 34.) Further, Plaintiff argues that the ALJ erred by not engaging a medical expert at the hearing to properly assess equivalence. (*Id.*)

Defendant responds that the medical evidence did not show the necessary GFR level for Plaintiff's kidney disease to meet Listing 6.05. (*Id.* at 35.) Defendant points out that Listing 6.05 requires a claimant to have two GFR values of 20 or less "on at least two occasions at least 90 days apart during a consecutive 12-month period." (*Id.* (citing 20 C.F.R. Part 404, Subpart P, App. 1 § 6.05(A)).)

//
//

In order to demonstrate that an impairment meets a listing, a claimant's impairment "must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Here, the medical records do not establish that Plaintiff's GFR levels met the criteria for Listing 6.05. The GFR figures Plaintiff points to are not both 20 or less; and both were taken in the same month, i.e., April 6 and 21, 2015—not at least 90 days apart as required. (*See* AR 1585, 1593, 1851.) Thus, the ALJ did not err in finding that Plaintiff's kidney diseases did not meet Listing 6.05 when the listing criteria are clearly not satisfied on this record.

**B. Equivalence**

Plaintiff next argues that even if Listing 6.05 was not met, the ALJ should have considered whether Plaintiff's impairment *equaled* Listing 6.05 based on his combined impairments. (Joint Stip. at 34-35.) When a claimant has more than one impairment the agency must determine "whether the combination of [the impairments] is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). In making this assessment, a claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester*, 81 F.3d at 829 (citations omitted). A finding of equivalence must be based only on the medical evidence. 20 C.F.R. § 404.1529(d)(3); *see also Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

Plaintiff bears the burden of proving that he has an impairment that meets or equals the criteria of a listed impairment. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d at 683 (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)).

24

The ALJ did not discuss the combined effects of Plaintiff's impairments or compare the combined impairments to any listing. But in raising this issue here, Plaintiff does not identify evidence that shows how his combined impairments equal a listed impairment. Rather, Plaintiff points to various health conditions such as "ineffective ambulation," "mental health limitations," "vision limitations," and "obesity issues" to argue that, in light of these conditions, the ALJ should have engaged a medical expert to review "all the evidence" as part of a "proper consideration of equaling Listing 6.05." Plaintiff offers no theory as to how his "mental health limitations" or "poor ambulation" combined to equal Listing 6.05, which addresses chronic kidney disease. Indeed, with respect to mental health impairments, the ALJ explicitly found Plaintiff's claim of depressive/anxiety disorder as not severe in this case. (AR 22.) The ALJ also explained that "[n]o physicians including examining and consulting physicians opined that the severe medically determinable impairments listed in Finding 3, either individually or in combination, meet or equal any of the listed impairments." (AR 23.)

Accordingly, the ALJ did not err by finding that Plaintiff's condition did not meet Listing 6.05, and the ALJ's failure to consider equivalence was not reversible error because Plaintiff did not offer any theory as to how his impairments combined to equal a listing impairment.

## VIII.  Impact of New and Material Evidence (Issue Eight)

Plaintiff argues in issue eight that new and material evidence created after the ALJ issued her decision warrants a disability determination or remand. (Joint Stip. at 37.) Plaintiff submits additional medical records showing that Plaintiff's kidney GFR scores have been below 20 since September 2016, suggesting a further deterioration of his kidney functioning and meeting the Listing 6.05 level for presumptive disability. (*Id*. at 38.) While Plaintiff argues that good cause exists for this Court to consider this information, Defendant points out that the new records on Plaintiff's kidney function post-date the ALJ's adverse

decision by 21 months and are not, therefore, relevant to the period at issue: January 22, 2012 through December 7, 2015, the date of the ALJ's decision. (*Id.*)

Pursuant to 42 U.S.C. § 405(g), remand is appropriate for consideration of new evidence when such new evidence is material and good cause exists for its late submission. *See Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984). Here, Defendant does not dispute that the new medical evidence demonstrates deterioration in Plaintiff's kidney condition, but Defendant argues that because this medical evidence is for dates well after the ALJ's decision and outside the period of disability at issue in this action, Plaintiff's remedy is to file a new application. (Joint Stip. at 38 (citing *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 512 (9th Cir. 1987)).) The Court agrees.

The period of disability under consideration by the ALJ was the period January 22, 2012 through December 7, 2015. (AR 28.) As noted above, nothing in the record evidence supports a finding that Plaintiff's impairments met or equaled Listing 6.05 during the relevant period. Accordingly, the Court concludes that the April 2016 evidence of Plaintiff's GFR scores is not material to the ALJ's 2015 determination.

## IX.    Whether the ALJ Properly Considered the Chiropractor Reports of Drs. Rameshini and Glandorf (Issue Nine)

In issue nine, Plaintiff argues that the ALJ did not properly consider the opinions of chiropractors Dr. Rameshini and Dr. Glandorf, including Dr. Glandorf's opinion that Plaintiff could only sit for five hours in an eight hour workday. (Joint Stip. at 40.) Plaintiff concedes that, under agency guidelines, a chiropractor is not an "acceptable medical source." (Joint Stip. at 40 (citing 20 C.F.R. § 404.1513(a)).) Nevertheless, Plaintiff contends that an ALJ "'may' consider the opinion of 'other' medical sources, such as a chiropractor, to determine the severity of an impairment." (Joint Stip. at 40.)

Defendant responds that Dr. Rameshini "did not opine on impairment severity or functional imitations." (*Id.*) Further, Defendant argues that the ALJ properly concluded that he was not bound by Dr. Rameshini's opinion, as part of Plaintiff's workers' compensation proceedings, that Plaintiff was "temporarily totally disabled." (*Id.* at 41.) With regard to the opinions of Dr. Glandorf, Defendant points out that while an ALJ "may" consider evidence from other sources such as chiropractic evidence, the ALJ is not required to accept or refute such evidence. (Joint Stip. at 41 (citing *Kottke v Astrue*, No. CV 07-05918-VBK, 2008 U.S. Dist. LEXIS 73329, *14 n.1 (C.D. Cal. Aug. 1, 2008)).)

As chiropractors, Drs. Rameshini and Glandorf are not considered "acceptable medical sources" as that term is defined by the agency, and therefore, they do not qualify as a "treating source." *See* 20 C.F.R. § 404.1502 (defining the term "acceptable medical source"); 20 C.F.R. § 404.1527(a)(2) (defining "treating source" as the "acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]"). Accordingly, Dr. Rameshini's and Glandorf's opinions are entitled only to the weight that is warranted by the facts of the case, 20 C.F.R. § 404.1527(f)(1), and the ALJ was permitted to discount their opinions after articulating "germane" reasons supported by substantial evidence for doing so. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015); *Murray v. Comm'r SSA*, 226 F. Supp. 3d 1122, 1139 (D. Or. 2017); *Bailey v. Astrue*, 725 F. Supp. 2d 1244, 1256 (E.D. Wash. 2010). The ALJ's rationale for assigning little weight to the chiropractors' opinions satisfied this standard.

The ALJ specifically considered the opinions of Dr. Rameshini and Dr. Glandorf and summarized their opinions in her decision, giving these opinions "little weight" because "chiropractors are not medically acceptable sources." (*See* AR 24.) The ALJ also rejected Dr. Rameshini's opinions about Plaintiff's "total temporary disability" status, explaining that

"TTD is a unique term used in Workers' Compensation claims." (AR 24.) Indeed, it is well-settled that even a treating physician's opinion is not binding on an ALJ with respect to the ultimate issue of disability. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001).

Accordingly, the ALJ's consideration of the chiropractors' opinions is free of legal error.

## X.    Remand For Further Proceedings Is Warranted

In light of the ALJ's errors noted above with respect to issues one (plaintiff's credibility); three (Dr. Kent's opinions); five (depth perception limitation); and six (consideration of obesity), the matter must be remanded. The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, a district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1020, n.26; *see also Leon v. Berryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017) (court must determine whether there are outstanding issues that must be resolved before a disability determination can be made and whether further proceedings would be useful). However, even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the

record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

Given the voluminous medical record, further administrative proceedings and, as noted, potential testimony of a medical expert, would be useful. It is unclear at this juncture whether proper consideration of all the available medical evidence and opinions would lead to a disability finding. Accordingly, this is not the "rare exception" in which the credit as true rule should be applied and the matter remanded for the award of benefits. *See Leon*, 874 F.3d at 1133. Therefore, the Court remands for further consideration and, if appropriate, development of the record.[6]

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

---

[6] As noted above, on November 6, 2017, Plaintiff filed a Request to Supplement the record with evidence of a Notice of Award indicating that Plaintiff had filed a subsequent application for benefits and was found disabled as of December 8, 2015, just one day following the adverse decision in his application for benefits at issue here. (Dkt. No. 21.) On December 19, 2017, Defendant filed an opposition to Plaintiff's Request to Supplement. (Dkt. No. 23.) On January 17, 2018, the Court allowed Plaintiff to supplement the record with the Notice of Award, but denied the request insofar as Plaintiff sought remand based solely on the fact of the 2017 Notice of Award. This Memorandum Opinion and Order does not change that conclusion. Here, as discussed above with respect to the Listing 6.05 requirements, the subsequent GFR evidence presented is from April 2016, a time period more than a year after the period relevant to the application involved in this case. *See Bruton v. Massanari*, 268 F.3d 824 (9th Cir. 2001) (denying remand based on subsequent award of benefits where "second application involved different medical evidence, a different time period and a different age classification"). However, because remand is warranted based on the several legal errors by the ALJ identified in this Memorandum Opinion and Order and because the Court cannot ascertain if all of the evidence presented in support of the second application fell outside the period of disability for the first application, upon remand, the ALJ should reconsider whether Plaintiff was disabled during the period relevant to his first application in light of any new evidence submitted during the second proceeding that may pertain to the period of disability in the first application. *See Nguyen v. Comm'r of SSA*, 489 Fed. Appx. 209, 210 (9th Cir. 2012).

29

Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

      LET JUDGMENT BE ENTERED ACCORDINGLY

DATED: May 25, 2018

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE